**G. A. Spelson for use of William Cran and D. A. Speliotopolus, Appellees, v. Joseph Leiter et al., Trustees under the Last Will of Levi Z. Leiter, Deceased, Appellants.**

Gen. No. 33,430.

Opinion filed July 3, 1929.

MAYER, MEYER, AUSTRIAN & PLATT, for appellants.

STEPHEN A. CROSS and W. L. MURRAY, for appellees.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

In an action in assumpsit, commenced June 22, 1928, in the municipal court of Chicago and based upon the provisions of a written lease by defendants to plaintiffs, there was a finding and judgment, entered February 1, 1929, against defendants for $11,000, and they appealed.

The lease is dated *January 2, 1926,* and by it defendants, as first parties, demised to plaintiffs, as second parties, for the period of five years *from May 1, 1928,* until and including April 30, 1933, the ground-floor store known as No. 4 South Clark Street, Chicago, and also 100 square feet in the basement, to be used for a

restaurant, soda fountain, confectionery, and sale of cigars and cigarettes, and for no other purpose. The rent for the entire term was $70,000, payable in monthly instalments, as stated, on the first day of each and every month. The monthly instalments for the first year were fixed at $1,000 each. The lease contained provisions, usual in such instruments, and also the following provision:

"It is hereby covenanted and agreed . . . that in case the lessors (defendants) shall desire to sell the premises of which the demised premises are a part, or to make a 99-year lease of said premises, or to lease the entire building in which said premises are situated to one party, or to remodel the building now on said premises, or to erect a new building thereon, they shall be entitled to terminate this lease by giving to the lessee (plaintiffs) six months' notice in writing of their desire so to terminate this lease, and by *repaying* to the lessee, upon the *surrender* of said demised premises, an amount equal to six months' rent herein reserved. And the lessee hereby covenants and agrees that, at the expiration of the period of such six months' notice, he will peaceably surrender to the lessors possession of the premises hereby demised, and the said lessee shall not be entitled to receive the said sum equal to six months' rent herein reserved, unless he shall so peaceably surrender possession at the expiration of said six months' period as hereinbefore provided."

Attached to the lease is a rider or memorandum, signed by the parties, to the effect that the lessors (defendants) agree to pay to the lessees (plaintiffs) certain amounts "in the event this lease is canceled before its expiration," viz, $5,000, "if canceled during the year 1928"; $4,000, if canceled during 1929; $3,000, if canceled during 1930; and $2,000, if canceled during 1931. And it is stated that "these amounts are in addition to the amount of one-half of the year's rental

provided in the lease for the cancellation on the six months' notice.''

In plaintiffs' statement of claim the lease and rider are set forth, and it is alleged that *prior to May 1, 1928,* ''defendants caused or permitted the building on said premises to be torn down or destroyed and said premises leased to another, thereby cancelling said lease''; and that thereby defendants became indebted to plaintiffs in the sum of $5,000, which defendants have failed and refused to pay. The clause in the lease, as first above mentioned, is then set forth, and it is further alleged that defendants either. made a 99-year lease or other lease on the premises or erected another building thereon, and, prior to May 1, 1928, without notice in writing to plaintiffs, caused the building on the premises to be torn down and destroyed and a new building started thereon; that by reason thereof ''defendants elected to take advantage of said clause of said lease and terminate said lease''; that defendants thereby became indebted to plaintiffs in the further sum of $6,000, ''being one-half of the year's rent during which the lease was so terminated,'' which sum defendants also have failed and refused to pay; and that defendants' total indebtedness to plaintiffs is $11,000, together with interest, etc.

Defendants in their affidavit of merits denied that they were indebted to plaintiffs in the sum of $11,000, or in any sum. As to the payments mentioned in the rider to be made to plaintiffs they alleged that the same ''were to reimburse the lessees (plaintiffs) for expenditure to be made by them in improving the premises described in said lease, and in installing fixtures, etc.''; that defendants at no time canceled the lease; that plaintiffs did not spend any sums in improving the premises; and that, therefore, they are not entitled to be reimbursed. Defendants further denied that they had caused the building to be torn down or that they had canceled plaintiffs' lease. And they al-

leged that, subsequent to the making of the lease, they entered into a 99-year lease with the Madison-Clark Building Corp., an Illinois corporation, for the entire ground and building (of which the premises leased to plaintiffs constituted a part); that said 99-year lease "was especially made subject to all existing leases and was thus made subject to the lease made to plaintiffs"; and that defendants took no part in tearing down the building, but that the same was torn down by the Madison-Clark Building Corp.

Upon the trial, after plaintiffs had introduced the lease and attached rider, Spelson, one of the plaintiffs, testified that he took the lease to the recorder's office of Cook county and had it there recorded on April 22, 1926; that thereafter and until February, 1928, he "didn't do anything" with reference to the premises, but was "waiting for possession"; that early in February, 1928, he noticed that the building was being torn down, that shortly thereafter he and his coplaintiff called on one Rogers, attorney for defendants, who informed them in effect that defendants, as trustees of the Leiter estate, had made a 99-year lease of the entire premises to the Madison-Clark Building Corp., that the lease had been made subject to the lease to them (plaintiffs), that said corporation was apparently wrecking the building for the purpose of erecting a new one, and that any claim of plaintiffs would have to be taken up with said corporation, etc.; that plaintiffs had never received any notice from defendants that plaintiffs' lease was to be canceled; that they had never taken possession of the premises leased to them because, prior to May 1, 1928, the old building had completely been torn down; that they had never paid any rent to defendants, but that on May 1, 1928 (the beginning of the term of their lease), they had tendered to defendants checks for $1,000 in payment of the first month's rent, which tender defendants had refused. The other plaintiff, Speliotopolus, corroborated Spel-

son as to what Rogers had told plaintiffs in February, 1928, and further testified that following said interview with Rogers they did nothing further in the matter and for the reason that plaintiffs "couldn't locate" the Madison-Clark Building Corp., and "couldn't find out who they were."

Defendants introduced in evidence the 99-year lease. It is dated November 1, 1926, recorded in the recorder's office of Cook county on December 11, 1926, and is for the term from November 1, 1926, to October 31, 2025. In sections 1 and 2 of article III of the lease it is provided:

"Section 1. It is expressly covenanted and agreed that this lease is made by the lessors and accepted by the lessee subject to various leases to various tenants of portions of the building now upon the demised premises, a list of which leases has been furnished by the lessors to the lessee, and each of which leases is subject to termination by the lessors on not more than six months' notice, and on sundry terms of payment to the lessee or lessees as described in said respective leases, and the said leases have been contemporaneously with the execution hereof assigned by the lessors to the lessees, and the lessee covenants and agrees that it will perform all the obligations of the lessors in said leases contained, and the lessors agree that the lessee shall from and after the date of the delivery of this instrument be entitled to receive and collect all the rentals in said respective leases reserved.

"Section 2. The said lessee covenants and agrees that it will forthwith and with all due diligence cause said leases so assigned to it to be terminated and cancelled, and will itself take possession of the various premises demised in such leases with all convenient speed, so that it may proceed as soon as may be to erect the building hereinafter in Article IV provided for."

In said article IV of the 99-year lease it is stated *inter alia* that "the lessee further agrees that it will with all reasonable speed, after it obtains possession of said premises from the present lessees of portions of said premises, erect or cause to be erected upon said demised premises a first class fireproof building . . . not less than twenty (20) stories in height, costing not less than $1,250,000, and covering substantially the whole area of said demised premises, except reasonable spaces for light and air."

Plaintiffs introduced a certified copy of the charter or certificate of incorporation of the Madison-Clark Building Corp., dated September 9, 1926, and signed by the then Secretary of State of Illinois, etc. The names and Chicago addresses of the subscribers to the stock and of the first board of directors are therein contained. Said charter or certificate and attached papers bear an indorsement showing that the same were filed for record in the recorder's office of Cook county on September 13, 1926. When the same was introduced in evidence, plaintiffs' attorney stated that plaintiffs made no charges of any conspiracy, etc.

And it was stipulated that the Madison-Clark Building Corp. took possession of the premises and the old building under the 99-year lease and tore the building down; that the old building was completely destroyed by *March 1, 1928;* that at the time of the commencement of the term of defendants' lease to plaintiffs (May 1, 1928) that corporation had commenced the erection of the new building upon the premises; and that "prior to the completion of said new building the National Surety Company took over the project of completing it, due to the inability of said Madison-Clark Building Corp. to complete the same."

No evidence whatever was introduced by plaintiffs showing any *actual* damages sustained by them by reason of the fact that they were unable to take pos-

session and occupy said ground floor store, etc., of the old building.

Counsel for plaintiffs in their printed brief here filed state that "the main question presented for review is the construction of the lease between the parties hereto and the correct application of the law governing same." Counsel for defendants in their brief state the question to be:

"Whether or not the provisions of the lease and rider, authorizing the termination of the lease by defendants in the event of certain contingencies upon their giving to plaintiffs six months' notice in writing of their desire to terminate the lease and *repaying* to plaintiffs, upon their *surrender* of the premises at the termination of said six months' notice, a sum equal to six months' rent, plus $5,000, were effective in the situation presented by this case, where the building was destroyed by a subsequent lessee of defendants prior to the time that plaintiffs took possession or paid any rent under the terms of their lease and prior to the commencement of the term thereof."

And counsel for defendants contend in substance (1) that said provisions were not intended to become effective until after the term of plaintiffs' lease had commenced and they had taken possession; (2) that, unless the method for terminating the lease reserved to the lessors (defendants) was followed, there is no provision in the lease for liquidated damages, and the attempted collection of the sums (aggregating $11,000) specified in the lease amounts under the circumstances disclosed to the enforcement of a penalty, which is not sanctioned by the courts; and (3) that plaintiffs' claim, if any they have, must be for *actual* damages sustained by them, which were not proved.

As to the first contention we are of the opinion that it is meritorious. The item of $6,000, of plaintiffs' aggregate claim of $11,000, is based upon the paragraph of the lease first above mentioned, wherein it

is provided that, in case the lessors (defendants) shall desire to sell the entire premises, of which the demised premises are a part, or to make a 99-year lease of said entire premises, etc., they (defendants) "shall be entitled to terminate this lease by giving to the lessee (plaintiffs) six months' notice in writing of their desire . . ., and by *repaying* to the lessee, upon the *surrender* of said demised premises, an amount equal to six months' rent herein reserved," etc. We think that the words "repaying" and "surrender" indicate an intention that the provision was only to be in effect after plaintiffs, as lessees, had actually taken possession of the particular parts of the building demised to them. It is not provided that, upon termination or cancellation of plaintiffs' lease, defendants, as lessors, shall "pay" to plaintiffs the equivalent of six months' rent, but that they shall "repay" it upon "surrender" of the demised premises by plaintiffs. The word "repay" is defined in the Century Dictionary as "to pay back; refund; to make return or repayment to." (See also *Harlan Coal & Land Co. v. King Harlan Mining Co.,* 192 Ky. 111, 119.) Until defendants had received six months' rent from plaintiffs they could not "repay" an amount equal thereto. Furthermore, plaintiffs could not "surrender" premises of which they did not have possession. And the repayment of said six months' rent was only to be made upon surrender of the *premises* demised, not upon surrender of the *lease.* The other item of $5,000 in plaintiffs' claim is based upon the attached rider, executed at the same time as the lease and more than two years before the term of plaintiffs' lease was to begin. It provides for certain additional payments to be made to plaintiffs "in the event this lease is canceled before its expiration," viz., $5,000, if the lease is canceled during the year 1928; $4,000, if the lease is canceled during the year 1929; and lesser sums if the cancellation occurs during the years 1930 or 1931. And it is also stated that "these

amounts are *in addition* to the amount of one-half of the year's rental provided in the lease for the cancellation on the six months' notice.'' This statement ties up the rider with said other mentioned provision of the lease, and, construing both together, we think the intention of the parties was that neither said other mentioned provision of the lease nor said rider was to be effective until after plaintiffs had taken possession on May 1, 1928. Although the rider was executed at the same time as the lease (January 2, 1926), there is no provision for any payments to be made during the years 1926 or 1927. If it had been the intention of the parties that, in case the old building (of which the demised premises were a part) was torn down during either of said two years, any amounts were to be paid by defendants to plaintiffs, that intention could easily have been expressed.

And we think that there is substantial merit in defendants' counsels' second contention as above stated. Nowhere in the lease or rider is there any provision for ''liquidated damages,'' as such. Nor is there any provision for such damages in case plaintiffs, as lessees of a portion of the old building, should be prevented from entering into the possession thereof at the beginning of the stipulated term because of the building having in the meantime been torn down and destroyed. In *Advance Amusement Co. v. Franke,* 268 Ill. 579, 581, it is said: ''The courts of this State, as well as in other jurisdictions, lean towards a construction which excludes the idea of liquidated damages and permits the parties to recover only damages actually sustained.'' (Citing *Scofield v. Tompkins,* 95 Ill. 190; *Radloff v. Haase,* 196 Ill. 365.)

And we are of the opinion that, inasmuch as plaintiffs did not introduce any evidence showing wherein and in what amount they were damaged because of the destruction of the premises demised to them and of their inability to take possession of said premises on

May 1, 1928, pay the stipulated rent and occupy said premises for the five-year term, the court erred in entering the judgment appealed from.

Accordingly the judgment of the municipal court is reversed and the cause remanded.

*Reversed and remanded.*

BARNES, P. J., and SCANLAN, J., concur.